Filed March 27, 1888.

| | |
|---|---|
| 114 | 229 |
| 115 | 479 |
| 116 | 70 |
| 116 | 398 |
| 123 | 262 |
| 114 | 229 |
| 149 | 451 |
| 149 | 452 |
| 151 | 451 |
| 152 | 138 |

No. 13,198.

## SMITH ET AL. *v.* SELZ ET AL.

FRAUDULENT CONVEYANCE.—*Complaint to Set Aside.*—*Partnership and Individual Creditors.*—A complaint by partnership creditors to set aside, as fraudulent, a conveyance of individual property, need not allege that the grantor had no individual creditors at the time the conveyance was made and the suit commenced, such fact being a matter of defence.

SAME.—*When Conveyance Not Fraudulent.*—Where one receives a conveyance of property from a fraudulent grantor, without guilty knowledge or actual fraud, and upon such terms as do not divert it from the payment of the grantor's debts or inflict substantial injury upon his creditors, such conveyance will not be set aside as even constructively fraudulent.

Smith *et al. v.* Selz *et al.*

SAME.—*Agreement of Grantee to Pay Debts of Grantor.*—Where, considering the exemption to which the debtor is entitled, there is only a nominal margin between the purchase-price and the highest estimated value of the land conveyed, and the good-faith grantee has assumed to pay individual creditors of the grantor an amount approximating the value of the property, and by their acceptance has become personally bound to them, the conveyance is neither fraudulent nor legally injurious to the partnership creditors of the grantor, and will not be set aside.

From the Clay Circuit Court.

*G. A. Knight* and *A. W. Knight*, for appellants.

*D. W. Henry, J. D. Early, W. W. Carter, J. Jump* and *J. C. Davis*, for appellees.

MITCHELL, C. J.—This suit was instituted in the Clay Circuit Court by the appellees, partners doing business under the firm name of Selz, Schwab & Co., against Henry W. Smith and Casper Rader, on an account for goods sold the latter, as partners, trading under the firm name of Smith & Rader, and against John J. Smith to set aside an alleged fraudulent conveyance of real estate made to him by Henry W. Smith, one of the defendants. There was a finding and judgment for the plaintiffs below for the amount of their claim against Smith & Rader, and also a finding and decree by which the conveyance from Henry W. to John J. Smith was conditionally set aside and the land made subject to the payment of the plaintiffs' judgment. Henry W. and John J. Smith prosecute this appeal.

There was no demurrer to the complaint in the court below, but it is challenged here as being insufficient to warrant the setting aside of the conveyance from Henry W. to John J. Smith, because it contains no averment that the grantor had no individual creditors at the time the conveyance in question was made and the suit commenced. Invoking the equitable rule which prevails in the distribution of the individual and partnership property of partners, when such property is brought under the jurisdiction of a court of equity, the appellants contend that, in the absence of an averment

such as that mentioned above, the complaint does not come within the rule declared in *Bruker* v. *Kelsey*, 72 Ind. 51, and other analogous cases, which requires that the pleading show affirmatively a complete right to resort to the land conveyed for the satisfaction of the plaintiffs' debt. Pertinent to the question now made, this court said, by way of suggestion, in *Hardy* v. *Mitchell*, 67 Ind. 485, that "It might be prudent, in a complaint by partnership creditors to set aside a conveyance of individual property, to allege that there were no creditors of the individual; but whether such allegation is essential, or whether the complaint might be deemed good without it, leaving the fact of the existence of such creditors, where such is the fact, to be shown in defence, we do not decide." Where, as in the present case, the complaint is conceded to be, in all other respects, sufficient, it would seem that a negative fact, of the character insisted upon, which of necessity must lie peculiarly within the knowledge of his adversary, need not be averred and proved by the plaintiff. Parties to a conveyance made and received with the confessed purpose of delaying and defrauding the grantor's creditors, may not insist that the transaction must stand, regardless of their unlawful design, until the partnership creditors shall have discovered and proved that the grantor did not owe individual debts to an amount equal to the value of the property thus conveyed. To require the plaintiff to make such averment and proof would be in opposition to a general rule, and would also render it exceedingly difficult, if not in many instances impossible, to reach property which had been conveyed in violation of the statute against fraudulent conveyances.

It is primarily the privilege of the grantor, who knows whether he owes individual debts or not, to bring the claims of his creditors forward by way of defence, or the creditors may themselves become parties and present their right to priority. Partnership creditors can not be compelled, however, to forego the institution of any proceedings until they shall

have ascertained the amount of the grantor's individual liabilities. If neither the grantor nor his creditors assert the claims of the latter, individual property conveyed in violation of the statute may be subjected to the payment of partnership debts, provided all the other conditions be shown which render a resort to such property necessary. It follows that the complaint can not be successfully assailed on the grounds urged.

The propriety of the finding and decree is challenged as not being sustained by the facts as they are made to appear.

It should be observed here, that the finding of the court was to the effect that the conveyance to John J. Smith ought to be set aside as being fraudulent and void as to the creditors of Henry W. Smith, but that the grantee should be reimbursed the sum of seven hundred and forty-nine dollars, paid by him on the debts of the grantor in pursuance of the agreement under which the conveyance was made. A decree followed, saving the rights of certain individual creditors of the grantor, whose claims the grantee agreed to pay as part consideration for the deed, and also declaring the amount paid by the grantee a prior lien upon the land.

Without detailing the facts minutely, the utmost that can be claimed by the appellees is, that the evidence supports the finding so far as it affects John J. Smith.

If it is certain that in the end the transaction must stand as to the grantee, it becomes immaterial that we consider the evidence at much length so far as it relates to the grantor. It is only necessary to say, that on the 31st day of December, 1884, Henry W. Smith, a married man, and resident householder, owned the farm in controversy, and on that day conveyed it by deed, in which his wife refused to join, to his brother, John J. Smith. The consideration agreed upon was $3,500, of which amount $3,240 was to be paid by the assumption of the individual debts of Henry W., and the balance, $260, by the promissory note of the purchaser. The debts assumed were supposed to be, and were, substantially

Smith *et al. v.* Selz *et al.*

all the individual debts owing by the vendor. The agreement to assume the debts was written in the deed, and the creditors, upon being notified, accepted the grantee as their debtor. The latter paid seven hundred and forty-nine dollars of the debts assumed, prior to the commencement of this suit.

The firm of Smith & Rader, of which the grantor, Henry W. Smith, was a member, was insolvent, and made a general assignment of its effects for the benefit of its creditors on the same day the land in controversy was conveyed. The grantee knew of the assignment, but he did not know that the assets of the firm were insufficient to pay its debts. The farm conveyed embraced a tract of 197 acres of land, and the highest valuation put upon it by any witness was $35 an acre. Other witnesses valued it at $20, $25 and $30 per acre, respectively.

Assuming that the court proceeded upon the highest valuation possible under the evidence, and the result would be that the whole tract was found to be worth $6,895. Reckoning the interest conveyed as worth two-thirds the value of the whole, and the highest valuation put upon the grantor's interest would be, in round numbers, $4,600, thus leaving a difference between the highest valuation and purchase-price of $1,100.

The court having found that John J. Smith should be reimbursed for the amount paid by him in pursuance of the agreement contained in the deed, it follows as a necessary deduction that it was also found that he was not possessed of any guilty knowledge as respects the conveyance, and that he did not participate in any fraudulent purpose of the grantor, if he had any, to delay or defraud his creditors. So far the finding is fully justified by the evidence.

A party who receives a conveyance or transfer of property from a debtor, with knowledge that it was made with intent to defraud the creditors of the latter, incurs the peril of losing that which he receives, without any right either at law or in equity of being reimbursed for what he may have paid for it.

*Chamberlin* v. *Jones, post,* p. 458, and cases cited; *Blair* v. *Smith, ante,* p. 114; *Seivers* v. *Dickover,* 101 Ind. 495; Wait Fraud. Conv., sections 192, 193.

When it is established that a grantee has taken a conveyance of a debtor's property, under circumstances which make him guilty of positive fraud, and that the transaction was fraudulent in fact, the conveyance will be deemed absolutely void as to creditors, and will not be permitted to stand even as indemnity for what the grantee may have paid. If, however, a court of equity finds that property has been purchased from a failing debtor, without any positive fraud on the part of the purchaser, and yet under such circumstances as make it highly injurious and inequitable as to creditors that the transaction should stand, a conveyance may be set aside upon such terms as will protect a purchaser whose purchase is only constructively fraudulent. In the one case, the transaction is fraudulent in fact, and the conveyance is utterly void as to creditors, and can not be permitted to stand for any purpose. In the other, the conveyance is fraudulent by construction of law, and is set aside upon considerations of public policy only, and then upon the condition that the equities of the purchaser who was guilty of no actual fraud be protected. *Blair* v. *Smith, supra; Chamberlin* v. *Jones, supra; Clements* v. *Moore,* 6 Wall. 299, 312; *Tompkins* v. *Sprout,* 55 Cal. 31; *Coiron* v. *Millaudon,* 19 How. 115; *Drury* v. *Cross,* 7 Wall. 299.

Upon a fair consideration of the evidence, the conveyance, therefore, if fraudulent at all as to the appellant John J. Smith, was only constructively fraudulent; and so, as we have seen, the court must have found. Courts of equity, in dealing with cases like the present, keep in view the cardinal principle "that the property of the debtor shall not be diverted from the payment of his debts, to the injury of his creditors, by means of fraud." If, however, a conveyance of property has been received from a fraudulent grantor, without guilty knowledge or actual fraud, and upon such terms

as do not divert it from the payment of his debts, nor inflict substantial injury upon the creditors, we can discover no equitable principle which will justify the setting aside of the conveyance as even constructively fraudulent.

In the exercise of its flexible jurisdiction, a court of equity may set aside a conveyance as fraudulent in law, when the disparity between the actual value of the property conveyed and the purchase-price is so great as to be legally injurious to the creditors, and to constitute a fraudulent diversion of the debtor's property, or it may, under like circumstances, compel the purchaser to account for the difference in value. In the case under consideration there was, as we have seen, a barely possible margin between the purchase-price and the highest estimated value, of eleven hundred dollars. Considering, however, that an honest debtor in embarrassed circumstances is sometimes compelled to sell real estate under value, and that honest purchasers are not compelled to pay the highest value possible, and we are unable to concur in the conclusion arrived at by the learned court below that the conveyance ought to be set aside as constructively fraudulent.

It must be remembered that out of the nominal margin of eleven hundred dollars the debtor would be entitled, in case of a sale upon execution, to claim an exemption of six hundred dollars. In view of this, and the further fact that the principal of the individual debts paid and assumed by the grantee is shown to have been $3,240 on December 31st, 1884, it becomes perfectly apparent that the two-thirds interest of the grantor subject to judicial sale can not be sold so as to pay the amounts due the individual creditors, and the amount due the grantee with the accumulated interest, and leave anything to be realized by the partnership creditors. If the setting aside of a conveyance results in no benefit to the creditors, and does nothing more than merely harass the parties to it, or if the debtor has no substantial interest in the property conveyed, a court of equity will refuse to interfere.

*Taylor* v. *Duesterberg*, 109 Ind. 165; *McLean* v. *Hess*, 106 Ind. 555.

In the present case it must be considered, since the grantee assumed the payment of debts due from the grantor to third persons, and by the acceptance of such persons became personally bound to them, that the $3,240 and interest had been actually paid before the bringing of the suit.

The only part of the purchase-money which remained unpaid and due to the grantor was the promissory note of $260. And this is all, as it seems to us under the evidence in the present case, that could have been subjected by the creditors.

Ordinarily, a good-faith purchaser from a fraudulent vendor, who receives notice of the fraud before full payment of the purchase-money, occupies the relation of a constructively fraudulent vendee as to so much of the purchase-price as remains unpaid. *Rhode* v. *Green*, 26 Ind. 83. This rule applies only as to the amount due to the vendor. *Seager* v. *Aughe*, 97 Ind. 285.

After the grantor's creditors had accepted the grantee as their debtor, the latter became primarily liable to the creditors, and it was not in the power of the parties to the conveyance to rescind the contract, and the court could not have compelled a rescission without having all those interested before it, and not then without having found that fraud, coupled with actionable injury, intervened. *Talburt* v. *Berkshire Life Ins. Co.*, 80 Ind. 434.

The situation in which the grantee is left by the decree setting aside the conveyance is this: while the decree deprives him of the land, he remains personally liable for the debts assumed, and must, therefore, see to it that the sale of the land produces a sum sufficient to pay the debts, interest and costs, or continue personally liable, and this, too, under a finding, fully justified by the evidence, exonerating him from any actual fraud.

We have, as will be observed, practically left out of view the grantor's relation to the conveyance, and have proceeded

upon the assumption that, even if the transaction was fraudulent as to him, which we very much doubt, upon the evidence, it was, as to the grantee, neither fraudulent nor legally injurious to the grantor's creditors, and hence should not have been set aside. We are thus led to the conclusion that the finding was not sustained by the evidence.

The judgment is therefore reversed, with costs, with directions to the court below to sustain the appellants' motion for a new trial.

